UNITED STATES DISTRICT COURT
For the
DISTRICT OF MASSACHUSETTS

_____
                                      )
GEORGE MICHAEL DOWD,      )
        Plaintiff,             )
                                      )          **CIVIL ACTION NO.**
v.                                     )          **04-11925 NG**
                                       )
JAMES DOWD,                  )
        Defendant.         )
_____)

**STATEMENT OF UNCONTESTED FACTS AND LEGAL ELEMENTS
IN SUPPORT OF MOTION OF THE DEFENDANT, JAMES DOWD, FOR
SUMMARY JUDGMENT AND REQUEST FOR ORAL ARGUMENT**

The Defendant, James Dowd ("J. Dowd"), hereby submits his statement of uncontested facts and elements of law in support of his Motion for Summary Judgment, served and filed herewith.

**STATEMENT OF UNCONTESTED FACTS**

ESTABLISHED FACTS

1) Defendant, J. Dowd, is a natural person residing at 203 Captain Eames Circle, Waltham, Massachusetts 02452. (Ex. A ¶2; Ex. B p. 3 ¶1).[1]

2) Plaintiff, George Michael Dowd ("G.M. Dowd"), is a natural person residing at 16070 Sixth East, 115 Avenue, Wearsdale, Florida 32195. (Ex. A ¶1; Ex. B ¶2).

3) G.M. Dowd is J. Dowd's father. (Ex. B p.3 ¶3).

4) On or about December 4, 2003, G.M. Dowd and J. Dowd executed a Purchase and Sale Agreement ("P & S") concerning a parcel of real estate located at 47 Mallard Way, Waltham, Massachusetts ("Property"). (Ex. C).

5) The purchase price of the Property contained in the P & S is $420,000. (Ex. C ¶7; Ex. D. p. 48 ll. 23-24 p. 49 ll.1-3).

---

[1] All Exhibits are attached to the Affidavit of Robert J. Brown, Jr. filed contemporaneously with the Motion of the Defendant, James Dowd, for Summary Judgment and Request for Oral Argument, Statement of Reasons in Support of Motion of the Defendant, James Dowd, for Summary Judgment and Request for Oral Argument and Statement of Uncontested Facts and Legal Elements in Support of Motion of the Defendant, James Dowd, for Summary Judgment and Request for Oral Argument.

6) The purchase price of $420,000 contained in the P & S was duly agreed upon and reflects the entire amount paid for the Property. (Ex. C ¶7).

7) The purchase price reflected a discounted price and G.M. Dowd had conversations with family members in which he explained his desire to sell the Property to J. Dowd for a discounted price. (Ex. D p. 62 ll.21-24, p. 63 ll.1-15).

8) The discounted price reflects G.M. Dowd's desire to provide J. Dowd with an early inheritance. (Ex. D p. 63 ll.4-15).

9) G.M. Dowd alleges he reduced the purchase price of the Property by $30,000, from $450,000 to $420,000, in exchange for an alleged $30,000 loan to J. Dowd. (Ex. D p. 45 ll.16-18).

10) G.M. Dowd alleges he entered into an oral contract with J. Dowd whereby J. Dowd was to pay G.M. Dowd $50,000, should J. Dowd sell the Property within a two (2) year period. (Ex. D p. 45 ll. 8-9).

11) There exists no contract or written agreement which references, in any way, any loan of $30,000 regarding the purchase and sale of the Property. (Ex. D p. 46 ll.13-15).

12) There are no witnesses to any agreement between J. Dowd and G.M. Dowd that creates an obligation for J. Dowd to pay $30,000 to G.M. Dowd.(Ex. D p. 61 ll.19-21).

13) There exists no contract or written agreement which references, in any way, any payment of $50,000 to G.M. Dowd regarding the subsequent sale of the Property to a third party. (Ex. D p. 46 ll.16-19).

14) No terms were ever discussed which were intended to govern the responsibilities of either party with respect to the $30,000 loan. (Ex. D p. 48 ll. 16-18).

15) No terms were ever discussed which were intended to govern the responsibilities of either party with respect to the payment of $50,000. (Ex. D p. 51 ll. 7-23, p. 52 ll. 3-24).

## THE ALLEGATIONS

1) In Count I of the Plaintiff's Complaint ("Complaint"), G.M. Dowd seeks recovery of $80,000 because G.M. Dowd alleges there existed a binding contractual agreement with J. Dowd for sufficient consideration relative to the sale of the Property and because J. Dowd made an alleged significant profit from the subsequent sale of the Property.

2) In Count II of the Complaint, G.M. Dowd petitions this Honorable Court to Order J. Dowd to compensate G.M. Dowd the aforementioned $80,000 as restitution, claiming that, pursuant to their alleged agreement, J. Dowd was unjustly enriched.

## **STATEMENT OF ELEMENTS OF LAW**

1) Summary judgment is a "device to make possible the prompt disposition of controversies on their merits without [a] trial, if in essence there is no real dispute as to the salient facts or if only a question of law is involved." Cassesso v. Commissioner of Correction, 390 Mass. 419, 456 N.E.2d 1123 (1983), *quoting* Community Nat'l Bank v. Dawes, 369 Mass. 550, 553, 340 N.E.2d 877 (1976).

2) Summary judgment is appropriate if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). An issue is genuine for purposes of summary judgment if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party" and a material fact is one which "might affect the outcome of the suit under the governing law." Hayes v. Douglas Dynamics, Inc., 8 F.3d 88, 90 (1st Cir. 1993), *quoting* Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). *See also* Seaboard Sur. Co. v. Town of Greenfield, ex rel. Greenfield Middle School Bldg. Comm., 370 F.3d 215, 218-219 (1st Cir. 2004).

3) When the court considers the materials accompanying a motion for summary judgment, the inferences to be drawn from the underlying facts contained in such materials must be viewed in the light most favorable to the party opposing the motion, and all doubt as to the existence of a genuine issue of material fact must be resolved against the party moving for summary judgment. Attorney General et al. v. Bailey, 386 Mass. 367 (1982).

4) The opposing party may not rely upon allegations, improbable inferences or unsupported speculation to a motion for defeat summary judgment. Once the moving party has properly supported its motion for summary judgment, the burden shifts to the nonmoving party, who "may not rest on mere allegations, or denials of his pleadings, but must adduce specific provable facts demonstrating that there is a triable issue." Brennan v. Hendrigan, 888 F.2d 189, 191 (1st. Cir. 1989); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). If evidence is merely colorable or not significantly probative, summary judgment may be granted. Rogers v. Fair, 902 F.2d 140, 143 (1st Cir. 1990), *citing to* Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). *See also* Mulvihill v. Top-Flite Golf Co., 335 F.3d 15, 19 (1st Cir. 2003) (Once the moving party satisfies his burden, the non-moving party bears the burden of "producing specific facts sufficient to deflect the swing of the summary judgment's scythe.") "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (italics in original).

5) To defeat a motion for summary judgment, the opponent must demonstrate, through admissible evidence, that a material factual dispute exists or that summary judgment is inappropriate as a matter of law. Godbout v. Cousens et al., 396 Mass. 254, 261, 485 N.E.2d 940 (1985). Inadmissible hearsay cannot be used to defeat a motion for summary judgment. Flesner v. Technical Communications Corporation, 410 Mass. 805, 817, 575 N.E.2d 1107 (1991) (1991) (When the only evidence supporting a party's claim is inadmissible hearsay, the party's claim will not survive summary judgment); McKenzie v. Brigham & Women's Hospital, 405 Mass. 432, 541 N.E.2d 325 (1989), *citing* Madsen v. Erwin, 395 Mass. 715, 721, 481 N.E.2d 1160 (1985) (Hearsay in an affidavit is unacceptable to defeat summary judgment). Those facts relied upon by the non-moving party, typically set forth in affidavits, depositions and the like, must have evidentiary value. As a rule, "[e]evidence that is inadmissible at trial, such as inadmissible hearsay, may not be considered on summary judgment." Vazquez v. Lopez-Rosario, 134 F.3d 28, 33 (1st Cir. 1998). Additionally, the non-moving party must produce a sufficient amount of evidence to defeat summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) ("The mere existence of a scintilla of evidence" is insufficient to defeat a properly supported motion for summary judgment.). In its scrutiny of the evidence put forth by the nonmoving party, the court can safety ignore "conclusory allegations, improbably inferences (sic) and unsupported speculation." Suarez v. Pueblo Int'l Inc., 229 F.3d 49, 53 (1st Cir. 2000), *quoting* Medina-Munoz v. R.J. Reynolds Tobacco Co., 896 F.2d 5, 8 (1st Cir. 1990).

6) The Federal Rules of Civil Procedure set forth the requirements for affidavits used in the course of summary judgment. In pertinent part, the rule provides that "opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein." Fed.R.Civ.P. 56(e). See e.g., Schubert v. Nissan Motor Corp, 148 F.3d 25, 29 (1st Cir. 1998) (finding that the district court property excluded affidavits from consideration because they did not meet the requirements of Rule 56(e) in that were based upon inadmissible hearsay). The affidavits and other documents relied upon by the opposing party "must concern facts as opposed to conclusions, assumptions, or surmise", Perez v. Volvo Car Corp., 247 F.3d 303, 316 (1st Cir. 2001) "not conclusory allegations." Lopez-Carrasquillo v. Rubianes, 230 F.3d 409, 414 (1st Cir. 2000). Further, in order to be admissible, the non-moving party's "proffered statements must be specific and adequately supported with particularized factual information." Perez v. Volvo Car Corp., 247 F.3d 303, 316 (1st Cir. 2001). *See also* Santiago-Ramos v. Centennial R.R. Wireless Corp., 217 F.3d 46, 53 (1st Cir. 2000) ("specific factual information based upon [Plaintiff's] personal knowledge").

7) The Fourth Clause of the Statute of Frauds provides that no action may be brought upon a contract for the sale of land or any interest in land unless it is in writing and signed by the party to be charged. M.G.L.A. c. 259 §1. Bibi v. Courville, 357 Mass. 782, 260 N.E.2d 156 (1970); *See* Rich v. DeAvellar, 2 Mass.App.Ct. 632, 318 N.E.2d 184 (1974). Any such contract is unenforceable against either the

4

buyer or seller if there is no sufficient written memorandum. Guarino v. Zyfers, 9 Mass.App.Ct. 874, 401 N.E.2d 857 (1980).

8) "When a party seeks to enforce an alleged oral contract that is within the Statute of Frauds…he must not only prove the existence of the oral contract itself but he must go one step further and prove a memorandum in writing containing the terms of that same oral contract so far as he seeks to enforce them." Fichera v. Lawrence, 312 Mass. 287, 288 (1942). *See also* Kalker v. Bailen, 290 Mass. 202, 195 N.E. 352 (1935).

9) Any promise involving real property is enforceable only if it meets the Statute of Frauds. Schwanbeck v. Federal-Mogul Corp., 412 Mass. 703, 592 N.E.2d 1289 (1992). In order for there to be an enforceable offer to purchase assets, real and personal, to satisfy the Statute of Frauds, the memorandum in writing would have to contain the terms of the agreement insofar as seller sought to enforce them. Schwanbeck v. Federal-Mogul Corp., 412 Mass. 703, 592 N.E.2d 1289 (1992).

10) In order to satisfy the Fourth Clause of the Statute of Frauds, the writing must incorporate the promise that the Plaintiff seeks to enforce. Harrington v. Fall River Housing Authority, 27 Mass.App.Ct. 301, 538 N.E.2d 24 (1989).

11) The writing required by the Statute of Frauds must disclose upon its face or by reference to other documents, the essential terms of the agreement of the parties. Whelan v. Sullivan, 102 Mass. 204 (1869); Bridge Enterprises, Inc., v. Futurity Thread Co., 2 Mass.App.Ct. 243, 310 N.E.2d 622 (1974).

12) A written contract may be modified by an oral agreement only with regard to the manner of, or time for performance of the written contract within the Statute of Frauds. Simpson v. Ursilion, 29 Mass.App.Ct. 699, 702 (1991).

13) The courts have established that "no verbal agreement between parties to a written contract, made before or at the time of execution of the contract are admissible to vary its terms or to affect its construction." Cummings v. Arnold, 44 Mass. 484. (1842).

14) The parol evidence rule "bars the introduction of prior or contemporaneous written or oral agreements that contradict, vary, or broaden an integrated writing." Berezin v. Regency Sav. Bank, 234 F.3d 68, 72 (1st Cir. 2000), *citing* Kobayashi v. Orion Ventures, Inc., 42 Mass.App.Ct. 492, 496, 678 N.E.2d 180, 184 (1997).

15) Where there "is no ambiguity in the contract, it must be enforced according to its terms." Freelander v. G.K. Realty Corp., 357 Mass. 512, 258 N.E.2d 786 (1970), *citing* Sherman v. Employers Liability Assoc. Corp, Ltd., 343 Mass. 354, 178 N.E.2d 864 (1961).

16) When the written agreement, as applied to the subject matter, is uncertain or equivocal, the circumstances of the parties leading to its execution may be shown for the purpose of elucidating, but not to change its terms. Robert Industries, Inc.

5

v. Spence, 362 Mass. 751, 753-754, 291 N.E.2d 407 (1973); Smith v. Vose & Sons Piano Co., 194 Mass. 193, 200, 80 N.E. 527 (1907).

17) When the words of a contract are plain and clear, they alone determine the meaning of the contract. Merrimack Valley Ntl. Bank v. Baird, 372 Mass. 721, 723, 363 N.E.2d 688 (1977).

18) Imperfect negotiations do not give rise to a contract. Blomendale v. Imbrescia, 25 Mass.App.Ct. 144, 516 N.E.2d 177 (1987).

19) It has been long held that "[a]ll essential terms of a contract must be sufficiently defined so that the nature and extent of the obligations of the parties can be ascertained." Caggiano v. Marchegiano, 327 Mass. 574, 579, 99 N.E.2d 861 (1951). *See generally* Corbin, Corbin on Contracts §501, 705 (1950) ("In contracts for the sale of land or goods, or for the rendition of services, the price to be paid in exchange is as much the subject matter of the contract as is the land, the goods, or the services, and is of equal importance in the transaction.").

20) Recovery in Quantum Meruit presupposes that no valid contract covers the subject matter of the dispute. MCI WorldCom Communications, Inc. v. Dep't of Telecommunications & Energy, 442 Mass. 103, 116 (2004). *See* Boswell v. Zephyr Lines, Inc., 414 Mass. 241, 250, 606 N.E.2d 136 (1993) ("But even [if Quantum Meruit had] been raised, the provisions of the express contract address the disputed issue, and '[r]ecovery in Quantum Meruit presupposes that no valid contract covers the subject matter of a dispute'.")

21) The "underlying basis for awarding quantum meruit damages is unjust enrichment of one party and unjust detriment to the other party." Salamon v. Terra, 394 Mass. 857, 859 (1985).

          Respectfully submitted,
          James Dowd,
          By his attorneys,

/s/ Robert J. Brown, Jr.
Nelson P. Lovins  BBO #306020
Robert J. Brown, Jr. BBO #658918
LOVINS & METCALF
Ten Cedar Street, Suite 22
Woburn, MA 01801
PH: (781) 938 – 8800
F: (781) 938 – 4753

Case 1:04-cv-11925-MBB   Document 19   Filed 05/09/2006   Page 7 of 7