```
          UNITED STATES DISTRICT COURT
           DISTRICT OF MASSACHUSETTS
```

GEORGE MICHAEL DOWD,
    Plaintiff,

    V.                                  CIVIL ACTION NO.
                                          04-11925-NG

JAMES DOWD,
    Defendant.

**MEMORANDUM AND ORDER RE:**
**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**
<u>**(DOCKET ENTRY # 17)**</u>

**June 30, 2006**

**BOWLER, U.S.M.J.**

    Pending before this court is a motion for summary judgment filed by defendant James Dowd ("J. Dowd" or "defendant"). (Docket Entry # 17). Plaintiff George Michael Dowd ("G.M. Dowd" or "plaintiff") opposes the motion. (Docket Entry # 24). After conducting a hearing on June 19, 2006, this court took the motion (Docket Entry # 17) under advisement.

<u>PROCEDURAL BACKGROUND</u>

    This case arises out of a dispute involving the transfer of real property at 47 Mallard Way, Waltham, Massachusetts ("property") from G.M. Dowd to his son, J. Dowd, in December 2003. G.M. Dowd maintains that J. Dowd violated the terms of two unwritten agreements upon which the Purchase and Sale Agreement ("P & S") (Docket Entry # 21, Ex. C) was predicated.

    Count One of the two count complaint alleges breach of

contract. Plaintiff argues that defendant violated an oral promise to pay him $50,000 in the event that he sold the property to a third party within two years of the original sale. (Docket Entry # 1, ¶¶ 5 & 11). Moreover, plaintiff maintains that he is owed an additional $30,000 as reimbursement for an unrecorded loan that defendant allegedly received from him pursuant to the property transfer. (Docket Entry # 1, ¶¶ 4 & 11). Count Two of the complaint is based on a quantum meruit theory of recovery. (Docket Entry # 1, ¶¶ 12-14).

J. Dowd, defendant, filed a counterclaim for the alleged breach of a separate unwritten agreement related to a 401(k) account ("401(k)") which belonged to Carol Ann Dowd ("Carol Dowd"), his deceased mother. (Docket Entry # 8). According to J. Dowd, G.M. Dowd has failed to comply with Carol Dowd's wish that he apportion the approximately $141,000 from her 401(k) into three equal parts, with one third going to him directly and the other two thirds going to J. Dowd and his brother, John Dowd. (Docket Entry # 8).

J. Dowd moves for summary judgment on counts one and two. (Docket Entry # 17). There is no language, he submits, in either the P & S or in any other writing to suggest the existence of a loan between J. Dowd and G.M. Dowd or of any stipulation between the two parties that J. Dowd would confer additional monetary benefit to G.M. Dowd upon sale of the property to a third party.

(Docket Entry # 17).

G.M. Dowd argues that there are genuine issues of material fact to be resolved and that summary judgment is therefore inappropriate as a matter of law. (Docket Entry # 24). In making this argument, G.M. Dowd posits that J. Dowd has not provided any affidavit or sworn testimony which would negate the allegation that conditional oral promises were formed prior to execution of the P & S. (Docket Entry # 24).

## STANDARD OF REVIEW

The standard of review for a summary judgment motion is well established. "Summary judgment is appropriate when the 'pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.'" Fed. Refinance Co., Inc. v. Klock, 352 F.3d 16, 30 (1st Cir. 1995) (quoting Fed. R. Civ. P. 56).

The moving party bears the initial burden of informing the "court of the basis for the motion, and identifying those portions of the record which it believes demonstrate the absence of a genuine issue of material fact." DeNovellis v. Shalala, 124 F.3d 298, 306 (1st Cir. 1997). "As to issues on which the summary judgment target bears the ultimate burden of proof, she

[or he] cannot rely on an absence of competent evidence, but must affirmatively point to specific facts that demonstrate the existence of an authentic dispute." McCarthy v. Nw. Airlines, Inc., 56 F.3d 313, 315 (1st Cir. 1995); accord DeNovellis v. Shalala, 124 F.3d at 306.  Thus, once the moving party makes a proper showing as to the "'absence of evidence to support the nonmoving party's case,' the burden of production shifts to the nonmovant," Dow v. United Bhd. of Carpenters, 1 F.3d 56, 58 (1st Cir. 1993), who may not rest on allegations in his briefs. Borshow Hosp. & Med. v. Cesar Castillo, 96 F.3d 10, 14 (1st Cir. 1996).

In the First Circuit, "[m]aterial facts of record set forth in the statement required to be served by the moving party will be deemed for purposes of the motion to be admitted by opposing parties unless controverted by the statement required to be served by opposing parties."  LR. 56.1; see also Cochran v. Quest Software, Inc., 328 F.3d 1, 12 (1st Cir. 2003) (holding that the plaintiff's failure to contest date in LR. 56.1 statement of material facts caused date to be admitted on summary judgment); Stonkus v. City of Brockton School Dept., 322 F.3d 97, 102 (1st Cir. 2003) (citing LR. 56.1 and deeming admitted undisputed material facts that the plaintiff failed to controvert).

The summary judgment record is as follows.  Disputes, where applicable, are noted.

FACTUAL BACKGROUND

On or about December 4, 2003, G.M. Dowd and J. Dowd executed a P & S for a parcel of real estate located at 47 Mallard Way, Waltham, Massachusetts. (Docket Entry # 21, Ex. C). The purchase price stipulated in the agreement was $420,000.[1] (Docket Entry # 21, Ex. C). That amount reflects the entire amount paid by J. Dowd to G.M. Dowd for the property.

During his deposition, G.M. Dowd testified that he initially offered the property to J. Dowd for $450,000, a purported reduction of $200,000 from the full value of the property. When it became clear that J. Dowd could not proffer $450,000, G.M. Dowd testified that he agreed to loan J. Dowd $30,000 so that he could make the purchase.

Paragraph 27 of the P & S, captioned "Construction of Agreement," reads as follows:

> This instrument, executed in multiple counterparts, is to be construed as a Massachusetts contract, is to take effect as a sealed instrument, sets forth the entire contract between the parties . . . and may be canceled, modified, or amended only by a written instrument executed by both the SELLER and BUYER.

(Docket Entry # 21, Ex. C). Nevertheless, G.M. Dowd stated in his deposition that the P & S was made contingent upon an

---

[1] As stated in the P & S, $50,000 was paid as a deposit on the day the P & S was signed. The remaining $370,000 was paid at the time of delivery of the deed in cash, or by certified, cashier's, treasurer's or bank check(s).

unwritten agreement that should J. Dowd sell the property within two years, he would pay G.M. Dowd an additional $50,000.

There is no written evidence recording this alleged agreement or the alleged agreement by G.M. Dowd to provide J. Dowd with a $30,000 loan. G.M. Dowd did testify during his deposition that his brother, William Dowd, witnessed the supposed agreement regarding the $50,000, although he acknowledged that there were no outside witnesses to the alleged loan agreement for $30,000.

DISCUSSION

As noted above, plaintiff moves for summary judgment on both the breach of contract claim and the quantum meruit claim, arguing that under the statute of frauds the express terms of the P & S govern the transfer of property in this case.

I.  Breach of Contract Claim

Under Massachusetts law, a contract for the sale of land is subject to the statute of frauds and must therefore be stipulated in writing. Mass. Gen. Laws ch. 259, § 1. Any promise involving real property is enforceable only if it meets the requirements of the statute of frauds. Schwanbeck v. Federal-Mogul Corp., 592 N.E.2d 1289, 1293 (Mass. 1992). Oral agreements related to the sale of property are generally not binding. See Bibi v. Courville, 260 N.E.2d 156, 157 (Mass. 1970) (holding that the

plaintiff's testimony of an oral agreement regarding a land trust did not modify the written terms of the agreement); Rich v. DeAvellar, 318 N.E.2d 184, 186 (Mass.App.Ct. 1974) (holding that an oral agreement to deed land fell within the statute of frauds and could not be enforced, even though some recovery was possible for performance made in reliance upon the oral agreement).

There are stringent restrictions on the admissibility of parol evidence as a means to interpret or alter a real estate contract.  "When a party seeks to enforce an alleged oral contract that is within the statute of frauds he must not only prove the existence of the oral contract itself but he must go one step further and prove a memorandum in writing containing the terms of that same oral contract in so far as he seeks to enforce them."  Fichera v. City of Lawrence, 44 N.E.2d 779, 780 (Mass. 1942).

Moreover, "extrinsic evidence to a document may be shown 'for purpose of elucidating, but not of contradicting or changing its terms.'"  Bourgeois v. Hurley, 392 N.E.2d 1061, 1064 (Mass.App.Ct. 1979) (citing Robert Indus., Inc. v. Spence, 291 N.E.2d 407, 409 (Mass. 1973)).  The parol evidence rule precludes introduction of evidence which alters or contradicts an unambiguous writing.  Ward v. Grant, 401 N.E.2d 160, 162 (Mass.App.Ct. 1980).

Massachusetts law carves out a broader allowance for the

admissibility of parol evidence in part performance cases. Occasionally, there are circumstances in which the risk of fraud is greatly diminished by giving effect to an unwritten agreement. <u>Pappas Indus. Parks, Inc. v. Psarros</u>, 511 N.E.2d 621, 622 (Mass.Ct.App. 1987).  "Such is the case if a 'party seeking enforcement, in reasonable reliance on the contract and on the continuing assent of the party against whom enforcement is sought, has so changed his position that injustice can be avoided by specific performance enforcement.'"  <u>Id.</u> (quoting <u>Restatement (Second) of Contracts</u> § 129 (1981)).  Nevertheless, such circumstances are not present in the case at bar.

G.M. Dowd first argues that J. Dowd breached a "binding contractual agreement" by failing to pay him $80,000 upon sale of the property at 47 Mallard Way.  (Docket Entry # 1, ¶ 11).  At his deposition, G.M. Dowd testified about the existence of two separate unwritten agreements.  (Docket Entry # 21, Ex. D).  At the same deposition, however, G.M. Dowd conceded that there was no written evidence as to either the $30,000 loan he allegedly provided to his son or as to the $50,000 that J. Dowd supposedly promised to pay if the property was sold within two years. (Docket Entry # 21, Ex. D).

Any oral agreements arrived at by G.M. Dowd and J. Dowd concerning the sale of the property are not enforceable unless the oral agreements satisfy the statute of frauds.  <u>See</u>

Schwanbeck v. Federal-Mogul Corp., 592 N.E.2d at 1293.  In order to satisfy the statute of frauds with respect to the alleged oral agreements, G.M. Dowd must produce "a memorandum in writing" containing the terms of the contracts "in so far as he seeks to enforce them."  See Fichera v. City of Lawrence, 44 N.E.2d at 780.  While G.M. Dowd has testified that his brother, William Dowd, witnessed the loan agreement for $30,000, G.M. Dowd has not produced any written evidence to suggest the existence of either purported oral agreement.

Moreover, the plain text of the P & S indicates that the two parties intended the P & S to act as a complete statement of the property transaction.  The language of the P & S states explicitly that the document is a "sealed instrument" which "sets forth the entire contract between the parties" and which is "binding."  (Docket Entry # 21, Ex. 4).  The purchase price in the P & S is indicated clearly as $420,000.  Thus, any extrinsic evidence contradicting this figure – such as oral testimony regarding the alleged loan and payment agreements between G.M. Dowd and J. Dowd - would be inadmissible at trial.  See Ward v. Grant, 401 N.E.2d at 162.

G.M. Dowd argues that before the motion for summary judgment can be granted, J. Dowd must produce an affidavit or sworn testimony regarding the existence of the alleged oral promises. (Docket Entry # 24).  Nevertheless, under the statute of frauds,

9

it is the writing in an integrated agreement which characterizes the sale of real property, not the oral confidences which may have anteceded it.  In sum, for the foregoing reasons, summary judgment is appropriate as to G.M. Dowd's breach of contract claim.

II.   Quantum Meruit Claim

G.M. Dowd's second claim set forth in Count Two (Docket Entry # 1, ¶¶ 12-14) is equitable in nature and rests on the principle of unjust enrichment under the law of restitution.  See Salamon v. Terra, 477 N.E.2d 1029, 1031 (Mass. 1985) (noting that the underlying basis for awarding quantum meruit damages in a quasi-contract case is unjust enrichment of one party and unjust detriment to the other party).  A determination that a party would be unjustly enriched requires, "'generally . . . that [the] party [would] hold property under such circumstances that in equity and good conscience he ought not retain it.'"  Stevens v. Nagel, 831 N.E.2d 935, 939 (Mass.App.Ct. 2005) (quoting Simonds v. Simonds, 380 N.E.2d 189, 194 (N.Y. 1978)).  As a basis for restitution, unjust enrichment requires more than benefit.  Cmty. Builders, Inc. v. Indian Motocycle Assocs., Inc. 692 N.E.2d 964, 979 (Mass.App.Ct. 1998).  "The benefit must be *unjust*, a quality that turns on the reasonable expectations of the parties."  Id.

G.M. Dowd and J. Dowd may very well have had different expectations entering into the P & S but the benefit afforded to

J. Dowd from the subsequent sale to a third party is nonetheless not unjust.  G.M. Dowd knowingly entered into an agreement to sell the property at 47 Mallard Way to his son.  In consideration of that agreement, J. Dowd paid his father $420,000.  Although J. Dowd may have received some pecuniary benefit from the sale of the property to a third party, G.M. Dowd submitted no evidence to suggest that he was so detrimentally impacted by the transaction as to necessitate a remedy in equity.  Accordingly, summary judgment is also proper as to G.M. Dowd's equitable claim in Count Two.

As a final matter, summary judgment was not sought on the remaining counterclaim.  Accordingly, a further status conference to set a trial date shall take place on July 20, 2006.  There shall be no further filing of summary judgment motions inasmuch as the deadline to file dispositive motions has expired.

CONCLUSION

In accordance with the foregoing discussion, J. Dowd's motion for summary judgment (Docket Entry # 17) on counts one and two is **ALLOWED**.  The parties shall appear for a status conference on July 20, 2006 at 2:30 p.m.

/s/  Marianne B. Bowler
**MARIANNE B. BOWLER**
United States Magistrate Judge